382 A.2d 1209

**COMMONWEALTH of Pennsylvania**

v.

**John A. KULP.**

Supreme Court of Pennsylvania.

Argued Jan. 11, 1977.

Decided Jan. 26, 1978.

George W. Westervelt, Jr., Stroudsburgh, for appellant.

Allen E. Ertel, Dist. Atty., Robert F. Banks, First Asst. Dist. Atty., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

On June 28, 1974, John A. Kulp, appellant herein, entered a plea of guilty to the charges of possession and delivery of a controlled substance, marijuana[1] and criminal conspiracy.[2] In the colloquy accompanying the entry of the pleas of guilty, Mr. Kulp testified that on one occasion, with the

1. Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(16) and (30), as amended 1972, Oct. 26, P.L. 1048, No. 263, § 1, 35 P.S. § 780–113(a)(16) and (30) (1977).

2. 18 Pa.C.S.A. § 903.

assistance of a female friend, he had sold one ounce of marijuana to two undercover agents for the sum of twenty dollars. The sale was made while appellant was working at a Citgo Gas Station in Williamsport, Lycoming County. Upon appeal to the Superior Court, a majority of that court vacated the sentence and remanded for resentencing, but refused to allow the withdrawal of the pleas and the award of a new trial. *Commonwealth v. Kulp*, 235 Pa.Super. 397, 344 A.2d 602 (1975).[3] We granted allocatur and now reverse the order of the Superior Court.

The critical issue raised is whether the post *Ingram*[4] colloquy in this case contained sufficient information for the hearing court to have been satisfied that the appellant was aware of the permissible range of sentences he was being exposed to by the entry of the pleas.[5] In *Ingram,* we attempted to delineate the perimeter of an adequate colloquy. In so doing, we cited with approval the Comment to Pennsylvania Rules of Criminal Procedure 319(a).[6] *Com-*

3. Judge Hoffman filed a dissenting opinion in which Judge Spaeth joined. *Commonwealth v. Kulp*, 235 Pa.Super. 397, 401–05, 344 A.2d 602, 604–06.

4. *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974). The opinion in *Ingram* was filed Jan. 24, 1974 and rehearing was denied March 22, 1974. There is no contention that the hearing court was not aware of *Ingram* at the time of this colloquy.

5. Because we reverse on this ground, we do not reach appellant's other contentions: 1) that the plea colloquy does not show appellant understood the nature of the offenses with which he was charged; 2) that the plea colloquy does not show appellant understood the essential benefits of jury trial; and 3) that trial counsel was ineffective in advising appellant to plead guilty when he had a defense to the charges.

6. Referring to *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A.2d 196 (1968), we stated in *Commonwealth v. Ingram,* supra: "This 'preferred practice' (which is now 'mandatory practice' under Rule 319) was that the trial court should 'conduct an *on-the-record* examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.'" *Id.* 455 Pa. at 201, 316 A.2d at 79. (emphasis added) (citations omitted).

*monwealth v. Ingram,* 455 Pa. 198, 204–5, n. 5, 316 A.2d 77, 81, n. 5 (1974). The cited comment specifically queried: "Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?". This question was framed recognizing that the decision to plead guilty to a charge could not be accepted as being knowingly and intelligently entered without an assurance that the accused fully comprehended the maximum punishment that might be imposed for his conduct. This information is obviously an integral part of the knowledge that should be possessed by one who is called upon to make the difficult decision whether to surrender his right to trial and to place himself at the mercy of the sentencing court. No civilized society could tolerate the waiver of such basic rights from one who was unaware of or misinformed as to such a critical fact.

■ The only part of the colloquy that addresses this subject is the following question and answer:

Q. [By the court to defendant] Do you understand what the sentences could be?

A. Yes.

The blatant inadequacy of this inquiry is so obvious that its failings need not be expounded upon. To suggest that the foregoing inquiry by the court and the response elicited was sufficient to satisfy the court that the accused fully and accurately understood the punishment he might receive for the charges to which he entered the plea, would render the entire procedure a formality without substance.

The Commonwealth asserts that this Court gave its imprimatur to this portion of the colloquy in our decision in *Commonwealth v. Vaughn,* 459 Pa. 35, 326 A.2d 393 (1974). The reliance upon *Vaughn* is obviously misplaced. In *Vaughn,* we quoted a small portion of a lengthy plea colloquy *merely* to demonstrate that trial counsel in that case had not improperly advised his client in a particular respect. Here the question is whether or not there was a legitimate basis for the court to conclude that the accused possessed the requisite knowledge pertaining to the permissible range of

sentences for the crimes involved. As stated, the acceptance of a defendant's affirmation without more would frustrate the purpose sought to be achieved by requiring an on-the-record colloquy prior to the entry of a plea. The reasoning urged by the Commonwealth presupposes the very information that the colloquy seeks to assure that the accused possesses.

Lastly, the Commonwealth urges in the event that we find the colloquy inadequate, that we remand for an evidentiary hearing to afford the Commonwealth the opportunity to establish, by testimony, that appellant possessed the requisite knowledge when he entered his pleas. In support of this argument, the Commonwealth relies on the language of this Court in *Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597 (1973). Therein we reasoned:

Although we cannot presume a voluntary waiver of any constitutional right from a silent record, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Commonwealth v. Cornitcher,* 447 Pa. 539, 291 A.2d 521 (1972), the issues here are whether a waiver can be found and upheld where it appears on the record in a subsequent hearing and the sufficiency of the subsequent colloquy in proving a knowing and intelligent waiver.

The appellant argues that we should make a per se prophylactic rule reversing convictions for failure to comply with Rule 1101, despite the fact that a subsequent full and fair hearing proved the waiver of the constitutional right was knowing and intelligent. When we make rules for criminal proceedings we do so in order to protect the rights of individual and therefore we expect strict compliance with those rules. However, a prophylactic exclusionary rule is applied only in extreme cases where all other attempts to secure compliance have proven unsuccessful. See generally *Mapp v. Ohio,* 367 U.S. 643, 651–652, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In this area there has been no showing of widespread flagrant disregard to

justify formulation of such a rule at this time." *Id.* 454 Pa. at 372, 312 A.2d at 599–600.[7] (footnote omitted).

In asserting its contention that remand is the appropriate remedy, the Commonwealth ignores that *Ingram* was decided after *Williams*. While *Ingram* has been held not to have changed the requirement as to the content of the colloquy, *Commonwealth v. Schork,* 467 Pa. 248, 356 A.2d 355 (1976); *Commonwealth v. Minor,* 467 Pa. 230, 356 A.2d 346 (1976), it unquestionably stressed the mandate of the rule that there be an *on-the-record colloquy:*

> "We reiterate here what was said in *Ingram, supra,* 455 Pa. at 204–205, 316 A.2d at 81: 'Adherence to [the guidelines set out in the Comments to Rule 319(a)] will serve to protect the rights of defendants while simultaneously facilitating appellate review.' Failure to satisfy these minimal requirements will result in reversal." *Commonwealth v. Dilbeck,* 466 Pa. 543, 547, 353 A.2d 824, 827 (1976). (citations omitted).

For pleas entered after our decision in *Ingram,* there can be no excuse for a hearing court to have failed to recognize the need of an adequate *on-the-record colloquy* reflecting a knowledgeable and intelligent waiver. The factors that influenced us in *Williams* to relax the mandate of Rule 1101 are obviously not present here. To permit remand at this late date to afford the Commonwealth an opportunity to establish an effective waiver would undermine the basic rationale of Rule 319(a) and condone a flagrant unexplained and inexcusable disregard of our procedural rules.

The Order of the Superior Court is Reversed and the Judgment of Sentences are Reversed and the matter is Remanded for Trial.

7. In *Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597 (1973), we were confronted with a waiver of jury trial under Pa.R.Crim.P. 1101. Similar to Rule 319(a), Rule 1101 also expressly requires that the colloquy appear of record. It is to be noted that although we did go beyond the actual colloquy and considered the record of the post conviction hearing in that case, we ultimately concluded that there was an insufficient basis for a finding of a knowing and intelligent waiver. *Commonwealth v. Williams,* supra.

JONES, former C. J., did not participate in the consideration or decision of this case.

EAGEN, C. J., and POMEROY, J., concur in the result.